**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**LARRY JONES**                                                                              **PLAINTIFF**

**VS.**                                          **4:06CV01578-WRW**

**MOUNTAIRE CORPORATION LONG TERM
DISABILITY PLAN and THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA**                                    **DEFENDANTS**

**ORDER**

Pending are Defendants' and Plaintiff's Motions for Summary Judgment.[1]

Responses were filed by each party.[2]

This is an ERISA[3] claim for benefits under 29 U.S.C. § 1132(a)(1)(b).   Plaintiff

Larry Jones was an employee of Mountaire Corporation ("Mountaire"), and participated in

its Disability Plan (the "Plan"), which was insured and administered by The Prudential

Insurance Company of America ("Prudential").

Defendants contend that Prudential's decision to deny Plaintiff Long Term Disability

("LTD") benefits is reasonably based on substantial evidence and on the clear terms of the

Plan, and, therefore, should be upheld.  Plaintiff contends that Prudential's decision was

arbitrary and should be reversed for ignoring the medical evidence presented by Plaintiff.

---

[1]Doc. Nos. 8, 11.

[2]Doc. Nos. 14, 16.

[3]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

1

Plaintiff further contends that, because Prudential is the claims administrator and the insurer, a conflict of interest exists, and a *de novo* review should be applied.

## I.  Background

### A.  Procedural History

Plaintiff last worked for Mountaire selling agricultural supplies on September 20, 2005.[4]   He filed a claim for LTD benefits on November 2, 2005, and attached a disability statement from his treating physician, Dr. C. E. Ransom.[5]   Plaintiff stated that he was unable to work because he had emphysema,[6] and could no longer work around dust and chemicals.[7]  Dr. Ransom stated that Plaintiff could preform sedentary work.[8]

On December 20, 2005, Plaintiff's claim was denied based on the opinion of a nurse who reviewed the medical records and found that Plaintiff's claimed impairment lacked support.[9]   Prudential explained that Plaintiff had worked in the past with the same chronic conditions, and there was no medical record of a sudden worsening of his condition at his date of disability."[10]

---

[4]A. R. J-256-58.

[5]A.R. J-259-64.

[6]*Dorland's Medical Dictionary*, (W.B. Saunders editor ) (31st ed. 2007) (1890), http://www.mercksource.com/pp/us/cns/cns_hl_dorlands. (defining emphysema as a lung disease that involves damage to the air sacs in the lungs.  The air sacs are unable to completely deflate, and are therefore unable to fill with fresh air to ensure adequate oxygen supply to the body).

[7]A. R. J-259.

[8]A. R. J-256.

[9]A. R. J-368, J-274.

[10]A. R. J-369.

Plaintiff appealed the decision by letter dated January 11, 2006.[11]  Along with this letter,  Plaintiff submitted more medical records and a report from his cardiovascular thoracic surgeon, Dr. Miguel Aguinaga.  Dr. Aguinaga confirmed that Plaintiff's coronary heart disease and severe chronic emphysema was incapacitating.[12]

Plaintiff submitted a job description from Mountaire that showed his job was not sedentary.   The description explained that Plaintiff was required to assist dealers at trade shows by setting up product displays. This part of the job required lifting 20, 40, and 50 pound bags of sample feed and gallon jugs of health products.[13]   In addition to this job description, a more detailed explanation was sent by Mountaire, which added that Plaintiff was required to visit farms, handle large animals, and to participate in the quarterly product inventory where he stood on his feet for long hours -- "stooping, lifting, and moving inventory in a dusty, dirty, environment."[14]

Prudential consulted its own rehabilitation specialist, Michael Chretien. He did not talk to Plaintiff or Mountaire, but consulted vocational reference materials and concluded that Plaintiff's regular occupation was listed in the *Dictionary of Occupational Titles* ("DOT")[15] as "Sales Representative, Animal Feed Products."  According to Mr. Chertien, the DOT classified the job as  "light," not "sedentary," which included the ability to

---

[11]A. R. J-224.

[12]A. R. J-224, J-217.

[13]A. R. J-223, J-226.

[14]A. R. J-125.

[15]Employment Training Division, U.S. Department of Labor, *Dictionary of Occupational Titles*, Vols I and II, (4th ed. rev. 1991).

"push/pull/and carry 10 to 20 pounds occasionally, and 10 pounds frequently, with periods of walking and standing during work hours."[16]

The DOT's definition of light work was sent to a reviewing physician, Dr. Kowalski, who concluded that emphysema did not prevent Plaintiff from working a light duty job.[17] After this, Prudential's claim manager prepared an exhaustive summary of Plaintiff's medical history and concluded that Dr. Kowalski was correct -- Plaintiff could perform light work.[18]   On March 3, 2006, Plaintiff was told that, based on his employer's job description and the DOT's definition of light work, he did not meet the Plan's definition of disabled.[19]

Plaintiff appealed again, requesting that Prudential take a second look at his actual job duties, and make sure that the chosen DOT job title accurately portrayed his work requirements.[20]   Plaintiff also requested an independent review by a "third-party [s]pecialist."[21]

Prudential complied with Plaintiff's first request, and another rehabilitation specialist reviewed the two different job descriptions.  This specialist found that the chosen DOT job

---

[16]A. R. J-276.

[17]A. R. J-278, J-281.

[18]A. R. J-285-87.

[19]A. R. J-347-52.

[20]A. R. J-127.

[21]A. R. J-128.

title was accurate, i.e., Plaintiff's regular occupation was: "Sales Representative, Animal-Feed Products," DOT number "272.357-010."[22]

Dr. Robert Brown, an internal medicine physician specializing in pulmonology, was hired as the third-party specialist. Dr. Brown reviewed Plaintiff's Pulmonary Function Test ("PFT") and treadmill test, and opined that Plaintiff was mildly impaired as a result of his lung and heart conditions. Dr. Brown concluded that Plaintiff had the physical ability to perform his light duty job, i.e., he can stoop, kneel, crouch, and lift from 10 to as much as 50 pounds. [23] Prudential denied Plaintiff LTD benefits on April 19, 2006.[24]

This was Prudential's final decision. Plaintiff attempted a third appeal, but Prudential notified Plaintiff that a third appeal was no longer allowed.[25] Plaintiff filed this action on October 31, 2006.[26]

## B. Medical History

In June 2005, Plaintiff saw his family doctor, Dr. Ransom, for right side chest pain, and was referred to radiologist for a chest x-ray.[27]

Plaintiff's chest x-ray was abnormal, and the radiologist made the following observations: "[e]xtensive emphysematous changes are noted with bullous change in the

---

[22]A. R. J-290.

[23]A. R. J-099.

[24]A. R. J-327-30.

[25]A. R. J-299.

[26]Doc. No. 1.

[27]A. R. J-190.

upper lobes."[28]   A bulla is a blister larger than one centimeter wide, that is filled with fluid.[29]

Bullous emphysema occurs where bullae are compressing functional lung tissue.[30]

A CT-Scan, performed on September 19, 2007, established extensive emphysematous changes throughout both lungs.[31]   After all studies were completed, Plaintiff was sent to Dr. Aguinaga, because a "suspicious lesion" was found in the upper part of his right lung.[32]   Dr. Aguinaga operated on Plaintiff in October 2005, performing a bronchoscopy, thoracoscopy, and a right upper lobe resection.[33]   The operative findings were:  dense adhesions in the right middle and upper lobe, large blebs[34] in the right upper lobe, and severe bullous emphysema throughout the right lung.[35]   The suspicious lesion in the right lung was benign.[36]

Before his lung surgery, Plaintiff was diagnosed with coronary artery disease.  In 1998, he had a triple by-pass, and, in 2004 a stent was placed in the right coronary artery.[37] Dr. John Henderson is Plaintiff's cardiologist.

---

[28]A.R. J-249.

[29]*Dorland's Medical Dictionary, supra.* note 6.

[30]*Id.*

[31]A.R. J-204.

[32]A.R. J-247.

[33]A.R. J-148.

[34]*Dorland's Medical Dictionary*, *supra.* note 6 (A bleb is the same as a bulla..).

[35]*Id.*

[36]A.R. J-146.

[37]A.R. J-122.

In November 2005, Dr. Ransom completed an Attending Physician's Statement,[38] and Dr. Aguinaga filled out a Mountaire Certification of Health Care Provider Form.[39]  Both doctors certified that Plaintiff could not return to work.  Dr. Ransom told Prudential that Plaintiff was unable to work because stress and physical exertion will increase his breathing problems,[40] and Dr. Aguinaga confirmed that "due to progressive lung disease, [Plaintiff] should not do physical labor or be confined or exposed to chemical agents."[41]

In January and March 2006, Plaintiff's treating physicians wrote letters to Prudential. Drs. Aguinaga, Henderson, and Ransom wrote that Plaintiff was incapable of returning to work because of the combined effects of coronary artery disease and emphysema.[42]

In addition to his follow-up letter, Dr. Ransom completed a work-status form that placed restrictions on Plaintiff with respect to standing, walking, lifting, climbing, balancing, kneeling, crawling, and reaching overhead.  He also concluded that Plaintiff cannot be exposed to changes in temperature, or to gas, dust, and fumes.[43]

### C.  Plan Definitions

Prudential's Plan states that a participant is disabled when "you are unable to perform the material and substantial duties of your regular occupation."[44]  Under the Plan, material

---

[38]A.R. J-263-64.

[39]A.R. J-208-10.

[40]A.R. J-264.

[41]A.R. J-209.

[42]A.R. J-170, J-163-64, J-122.

[43]A.R. J-109-10.

[44]A.R. J-063.

and substantial duties cannot be reasonably omitted or modified from the regular work duties.[45]  Prudential will look at the occupation as it is regularly performed, and not work tasks that are performed for a specific employer at a specific location.[46]

## II.  Standard of Review

ERISA contains no standard of review, but a reviewing court should apply a *de novo* standard of review unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[47]  Where a plan gives the administrator discretionary power, the administrator's decision is reviewed only for an abuse of discretion.[48]

## III.  Authority

### A.  Abuse of Discretion Review

Under the discretionary standard, when a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be reversed.[49] In other words, an administrator's decision must be supported by enough evidence (more than a scintilla but less than a preponderance) to convince a reasonable person that it is proper.[50]

---

[45]*Id.*

[46]*Id.*

[47]*Firestone and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[48]*Id.* at 111; *King v. Hartford Life and Accidental Insurance Co.*, 414 F.3d 994 (8th Cir. 2005).

[49]*Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1180-81 (8th Cir. 2001).

[50]*Donaho v. FMC Corp.*, 74 F.3d 894, 900 (8th Cir. 1996).

The discretionary decision of a plan administrator is not unreasonable just because another reasonable decision could have been made.[51]  If the plan administrator has discretion -- its decision will be overturned if it has abused its discretion.

Abuse of discretion is synonymous with the concept of acting in an arbitrary and capricious manner.[52]  A decision to deny benefits is not arbitrary and capricious as long as it meets the following requirements:  (1) a reasonable explanation, based on the evidence, is offered for the decision; (2) the decision is based on a reasonable application of the plan; or (3) the administrator based its decision on a consideration of the relevant factors that include the important aspects of the problem.[53]

A court may apply a less deferential standard where the plan beneficiary presents "material probative evidence" demonstrating that (1) a palpable conflict of interest or serious procedural irregularity existed, which (2) caused a serious breach of an administrator's

---

[51]*Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 773 (8th Cir. 2006); *Chronister v. Baptist Health*, 442 F.3d 648, 654 (8th Cir. 2006).

[52]*Aboul-Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001) (arbitrary and capricious is same standard as abuse of discretion); See also *Gaither v. Aetna Life Ins. Co.*, 388 F.3d 759, 767 (10th Cir. 2004) (when a plan grants discretion, the decision is upheld unless it is arbitrary and capricious); *Abnathya v. Hoffmann-La Roche, Inc*., 2 F.3d 40, 44-45 (3d Cir. 1993) (same); *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005) (same); *Jett v. Blue Cross & Blue Shield of Alabama*, 890 F.2d 1137, 1140 (11th Cir. 1989) (same); *Moore v. CapitalCare, Inc.*, 461 F.3d 1 (D.C. Cir. 2006) (abuse of discretion and arbitrary and capricious involve questions of reasonableness).

[53]*Houston v. Provident Life and Accident Ins. Co.*, 390 F.3d 990, 995 (7th Cir. 2004) (citing *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)).

fiduciary duty toward a plan beneficiary.[54]  The missteps of the administrator must be connected to the adverse decision.[55]

Evidence that the plan administrator did not perform a meaningful review of the request for benefits and evidence of irregularities will lessen the standard of review.[56]  A beneficiary claiming procedural irregularities must show that the plan administrator acted dishonestly, from an improper motive, or failed to use good judgment.[57]  If this is shown, the review can be *de novo,* depending on the seriousness of the errors.[58]

### B. *De Novo* Review

When conducting a *de novo* review, a district court makes a decision based on the greater weight of the evidence.[59]   There is no deference given to either side.

The medical evidence is reviewed without deference to the opinions of Plaintiff's treating physician.[60]  The reliability of a treating physician's opinion must be measured  by considering  the duration of the patient-physician relationship, and the objective clinical evidence supporting his opinions.[61]  On the other hand, the reliability of a reviewing

---

[54]*Delta Family-Care Disability and Survivorship Plan v.  Marshall*, 258 F.3d 834, 840 (8th Cir. 2001).

[55]*Schatz v. Mutual of Omaha Inc. Co.*, 220 F.3d 944, 948 (8th Cir. 2000).

[56]*Janssen v. Minneapolis Auto Dealers Benefit Fund*, 447 F.3d 1109 (8th Cir. 2006).

[57]*Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996) (citing Restatement (Second) of Trusts § 187 (1959)).

[58]*Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998).

[59]*Taylor v. Kawner*, 898 F. Supp. 667, 672  (W.D. Ark. 1995).

[60]*Black & Decker v. Nord*, 538 U.S. 822, 832 (2003).

[61]*Coker v. Metropolitan Life Ins.*, 281 F.3d 793, 799 (8th Cir. 2002).

physician's conclusions must be measured by considering the relationship between the reviewing physician and the plan administrator. The weight given a reviewing physician's opinions may be lessened if he has never examined the plaintiff.[62]

## IV. Discussion

### A. Regular Occupation

Prudential's rehabilitation specialists used the DOT to classify Plaintiff's regular occupation:  Sales Representative, Animal-Feed Products, job title number 272.357-010.[63] According to the DOT this is a wholesale trade, and the job duties are described as follows:

> Sells livestock and poultry-feed products to farmers and retail establishments: Suggests feed changes to improve breeding of fowl and stock. Performs other duties as described under SALES REPRESENTATIVE (retail trade; wholesale tr.) Master Title. May specialize in selling feed supplements and be designated Sales Representative, Cattle-And-Poultry Feed Supplements (wholesale tr.).GOE: 08.02.01 STRENGTH: L GED: R4 M3 L4 SVP: 6 DLU: 77[64]

The DOT's occupational definitions contain a series of codes which are defined in Appendix C.[65]   For instance, "DLU" means "Date of Last Update."[66]   The DOT also gives each job title a "Strength Rating" which outlines general physical demands of each occupation.  In this case, the rating is "L" which stands for "light work."  The definition of "light work" is as follows:

---

[62]*Donoho v. F.M.C. Corp.*, 74 F.3d  894, 901 (8th Cir. 1996)

[63]Employment and Training Administration, U.S. Department of Labor, *supra.* note 15, Vol. I., at 226.

[64]*Id.*

[65]*Id.* Vol. II, at 1009.

[66]*Id.*

11

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects . . . Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.[67]

Prudential relied on the above definition of "light duty" to identify Plaintiff's "regular occupation," and, based on this general functional standard, concluded that Plaintiff is not disabled. Prudential maintains that Plaintiff is able to perform light work, and can, therefore, perform the regular duties of a of job title, sales representative, animal feed products, even though his actual job is more physically demanding. Plaintiff's treating physicians believe that, because of the Plaintiff's impaired cardiac and pulmonary functions, he cannot perform either his actual job duties, or the light work outlined by the DOT.

## B. Conflict of Interest

Prudential contends that its decision is based on substantial evidence presented by two physicians and two rehabilitation specialists. Plaintiff counters that Prudential's decision to deny benefits circumvents the evidence, and represents an abuse of discretion caused by Prudential's conflict of interest. I agree.

Prudential is the insurer and administrator of claims. Standing alone, this does not mean that the claim was unfairly denied because Prudential was trying to protect its own

---

[67]*Id.* at 1013; See also *Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (relying on the Department of Labor's definition of light work).

12

interests.[68]  However, a conflict of interest can be supported by evidence of a failure to make a thorough review of the relevant facts.[69]

### C.   Procedural Irregularities

The administrative record shows the following irregularities: (1) failure to explore environmental restrictions and the extent to which Plaintiff's job involves exposure to contaminants and changes in temperature; (2) disregard of Plaintiff's actual job duties; (3) failure to identify the material and substantial duties of Plaintiff's job, by consulting with Mountaire to determine what duties could be modified or eliminated; (4) failure to provide a detailed description of Plaintiff's actual duties to reviewing physicians; and (5) a narrow and outdated application of the Department of Labor's occupational information.

Plaintiff raised the issue of work-environment restrictions when he applied for LTD benefits[70] and when he filed his appeal.[71]  Drs. Ransom and Aguinaga provided medical evidence that Plaintiff could not tolerate exposure to contaminates and temperature changes.

Prudential never considered how inhaling dust and chemicals may be harmful to an individual with severe emphysema.  The DOT's silence about environmental restrictions does not reasonably allow Prudential to disregard these factors.

---

[68]*Marshall*, 258 F.3d at 840.

[69]*Buttram v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996) (finding that a decision is arbitrary where the plan trustee does not inquire into the relevant circumstances at issue).

[70]A.R. J-259.

[71]A.R. J-120.

The DOT describes the job as selling products to farmers and wholesalers. Plaintiff told Prudential that the chemicals and dust at his customer's stores affected his breathing.[72] In addition, Mountaire also indicated that Plaintiff's job duties involved exposure to dust and dirt.[73]

Under the Plan's terms, a material and substantial job duty is one that cannot be eliminated or modified, and disability is established by an inability to perform these crucial tasks. Instead of examining all factors involved in Plaintiff's work, Prudential focused solely on functional requirements established by the DOT's "light work" definition.

There is no evidence that Prudential contacted Plaintiff or his employer to find out if an ability to tolerate dust and chemicals was an essential part of selling agricultural supplies. In short, Prudential did not conduct a meaningful review of all relevant factors to determine the true extent of Plaintiff's disability.[74]   Such factors indicate that Prudential acted arbitrarily.[75]

Prudential provided the same general "light work" descriptions to the reviewing physicians. Consequently, Dr. Brown was never informed that Plaintiff's job included visiting farms, exposure to dusty feed mills, and exposure to agricultural chemicals. Dr. Brown was told that Plaintiff "has worked as a salesman of farm feed products . . . he is required to stoop, kneel, crouch, and lift from 10 to as much as 50 pounds."[76] Dr. Brown was

---

[72]A.R. J-259.

[73]A.R. J-125.

[74]*Janssen*, 447 F.3d at 1113.

[75]*Houston*, 390 F.3d at 995, *Buttram*, 76 F.3d at 900.

[76]A.R. J-099.

not told how often Plaintiff was required to lift 50 pounds, or if Plaintiff was required to lift

this much only once during a given work day or repeatedly.  In fine, Dr. Brown was not

provided with a description of the "material and substantial" duties of selling agricultural

products to wholesalers and farmers.  The same is true of the other reviewing physician -- Dr.

Kowalski.

Finally, Prudential failed to throughly review the Department of Labor's occupational

standards.  The DOT has been superceded by the "O-Net,"[77] which stands for "Occupational

Information Network."[78]  This database was created in 1998 and contains the most

comprehensive and up-to-date source of job descriptions.  It outlines all the essential skills

and abilities of certain occupations and describes typical work settings.[79]  The DOT job title,

heavily relied on by Prudential's experts, was last updated in 1977,[80] and does not give a

detailed a description of the work setting.  Experts in any field are expected to keep abreast

of the latest information.  Prudential's vocational experts are either unqualified or dishonest.

The O-Net contains a job title of "Sales Representative, Agricultural,"[81] which is

cross referenced to the DOT job title chosen by Prudential's experts.  This job title differs

---

[77]Employment and Training Administration, U.S. Department of Labor, *The ONet* at
http://www.doleta.gov/programs/onet/; See Mathew Mariani, *ONET Replaces the Dictionary of
Occupational Titles*, Occupational Outlook Quarterly, (Spring, 1999),
http://www.findarticles.com.

[78]*Id*.

[79]*Id.*

[80]Employment and Training Administration, U.S. Department of Labor, *supra.* note 15,
Vol. II, Appendix C, at1009 (explaining that "DLU 77" following the definition stands for date
of last update-- 1977).

[81]Information Technology Associates, at http://www.occupationalinfo.org/onet/49005a
(last revised August 11, 2006).

from the DOT because it outlines "work context" and indicates that it involves frequent exposure to pollutants, gasses, dust, and extremes in temperatures.[82]

Prudential narrowed the description of Plaintiff's regular occupation to general physical functions, and used an outdated standard to evaluate and deny disability benefits. If Prudential had engaged in an adequate vocational assessment, used up-to-date materials, took into consideration Plaintiff's actual job duties, and provided the reviewing physicians with better information, the outcome of the review would likely have been different. Because of a failure to examine all relevant facts -- a *de novo* review is appropriate.

Two reviewing physicians gave opinions that Plaintiff was able to perform light duty work. Plaintiff's treating physicians disagreed and limited Plaintiff to a sedentary job. The definition of "sedentary work" set out in the DOT is as follows:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, *including the human body*. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.[83]

Plaintiff's treating physicians include Dr. Ransom, a family practice physician, Dr. Henderson, a cardiologist, and Dr. Aguinaga, a cardiovascular and thoracic surgeon.  Dr. Ransom and Dr. Aguinaga addressed Plaintiff's restrictions with respect to environmental factors.   The reviewing physicians did not address this issue.  Dr. Henderson and Dr.

---

[82]*Id.*

[83]Employment and Training Administration, U.S. Department of Labor, *supra*., note 15 Vol. II,  Appendix C at 1113.

Aguinaga concluded that Plaintiff was severely impaired as a result of a combination of his heart and lung conditions. Dr. Kowalski and Dr. Brown addressed these conditions separately and did not provide an opinion on how a reduction in lung and heart capacity could interact to increase impairment.

Moreover, Dr. Brown's opinion with respect to Plaintiff's ability to perform his work is based on incomplete information. Since Dr. Brown was never given the opportunity to see and talk to Plaintiff, and never contacted Plaintiff's employer, his opinion was not fully informed.

Plaintiff has been seeing Dr. Henderson for ten years, and regularly sees Dr. Ransom. Dr. Henderson advised that Plaintiff's heart had a "reduced left ventricle ejection fraction."[84]   This means that this ventricle is pumping at a slower than normal rate.[85]  Dr. Ransom was in the best position to observe the onset and progression of Plaintiffs health problems.   Dr. Aginuaga observed the condition of Plaintiff's lungs in the operating room.[86] After removing adhesions in the right lung, and a portion of Plaintiff's right upper lobe, he concluded that Plaintiff *should not do physical labor.*[87]  So, despite Dr. Brown's conclusion that Plaintiff was capable of lifting 50 pounds, a cardiovascular and thoracic surgeon advised that such activity would be detrimental.

The opinions of Plaintiff's treating physicians are given greater weight for the following reason: (1) Dr. Aguinaga and Dr. Henderson  are more qualified in the fields of

---

[84]A.R. J-122.

[85]*Dorland's Medical Dictionary, supra.*, note 6.

[86]A.R. J-148.

[87]A.R. J-209 (emphasis added).

17

heart and lung disease; (2) each doctor has first hand knowledge of Plaintiff's physical condition; (3) their opinions are based on objective findings and observations, including lung x-rays and a ct-scan;[88] an abnormal ECG;[89] a diminished left ventricle ejection fraction;[90] an abnormal pulmonary function test;[91] and an inability to complete a tread mill test because of fatigue and shortness of breath.[92]

The greater weight of the evidence supports the conclusions of Plaintiff's treating physicians -- he is limited to sedentary work, at best.  Because Plaintiff can no longer perform

the material and substantial duties of his regular occupation, he is entitled to LTD benefits under the terms of the plan.

## V.  Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. No. 8) is DENIED, and Plaintiff's Motion for Summary Judgment is GRANTED (Doc. No. 10). Plaintiff is awarded Long Term Disability benefits under the terms of the Plan beginning

---

[88]A.R. J-214.

[89]A.R. J-177.

[90]A.R. J-122.

[91]A.R. J-119.

[92]A.R. J-124.

October 3, 2004; prejudgment interest on all past due benefits under 29 U.S.C. §

1132(a)(3)(B); and appropriate attorney fees under 29 U.S.C. § 1132(g)(1).

IT IS SO ORDERED this 16th day of August 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE